UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| REPUBLIC GROUP, LLC, MBE CAPITAL PARTNERS, LLC, RAFAEL MARTINEZ, CHELSEA MARTINEZ AND REACHING NEW HEIGHTS, CORP., <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, NA AND MERRILL LYNCH, A BANK OF AMERICA COMPANY, JOHN DOES 1–10 AND ABC CORP. 1–10, <br><br> Defendants. | Civil Action No. 20-12081 |

## MEMORANDUM OF DEFENDANTS BANK OF AMERICA, N.A. AND MERRILL LYNCH IN SUPPORT OF MOTION TO DISMISS

| | |
|---|---|
| Philip S. Rosen <br> ZEICHNER ELLMAN & KRAUSE LLP <br> 33 Wood Ave. South, Suite 110 <br> Iselin, New Jersey 08830 <br> Tel: (973) 618-9100 <br> prosen@zeklaw.com | Enu A. Mainigi (*pro hac vice* admission pending) <br> Kenneth C. Smurzynski (*pro hac vice* admission pending) <br> Craig D. Singer (*pro hac vice* admission pending) <br> Jesse T. Smallwood (*pro hac vice* admission pending) <br> WILLIAMS & CONNOLLY LLP <br> 725 Twelfth Street, N.W. <br> Washington, D.C. 20005 <br> Tel: (202) 434-5000 <br> emainigi@wc.com <br> ksmurzynski@wc.com <br> csinger@wc.com <br> jsmallwood@wc.com |

*Attorneys for Defendants Bank of America, N.A. and Merrill Lynch*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

I. PLAINTIFFS FAIL TO STATE DISCRIMINATION CLAIMS UNDER SECTION 1981 AND THE NJLAD ............................................................................. 5

II. PLAINTIFFS FAIL TO STATE RETALIATION CLAIMS UNDER SECTION 1981 .................................................................................................................................. 8

III. PLAINTIFFS FAIL TO STATE RETALIATION CLAIMS UNDER THE NJCRA ................................................................................................................... 11

IV. PLAINTIFFS FAIL TO STATE CLAIMS FOR BREACH OF CONTRACT ................. 11

    A. Plaintiffs do not plead a breach of any contractual provision ............................... 12

    B. Plaintiffs do not plead a breach of the implied covenant of good faith and fair dealing ............................................................................................................. 14

CONCLUSION .................................................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

*Adams v. Hult*, No. 146820, 2019 WL 1399551 (D.N.J. Mar. 28, 2019) ........................................ 11

*Anjelino v. N.Y. Times Co.*, 200 F.3d 73 (3rd Cir. 1999) ............................................................... 5

*Argentina v. Gillette*, 778 F. App'x 173 (3d Cir. 2019) ................................................................. 9

*Barker v. Our Lady of Mount Carmel Sch.*, No. 12-4308, 2016 WL 4571388 (D.N.J. Sept. 1, 2016) ......................................................................................................................... 9, 10

*Barron v. New Jersey*, No. 2:17-735, 2018 WL 324725 (D.N.J. Jan. 8, 2018) .............................. 11

*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001) ............................................................. 6

*Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296 (D.N.J. 2019) .............. 15

*Cottrell v. Zagami, LLC*, 94 A.3d 878 (N.J. 2014) ....................................................................... 11

*Elmiry v. Wachovia Corp.*, No. 04-3621, 2007 WL 4117260 (D.N.J. Nov. 16, 2007), aff'd, 410 F. App'x 560 (3d Cir. 2011) ............................................................................. 6

*Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788 (3d Cir. 2010) ................................ 9

*Farash & Robbins, Inc. v. Fleet Bank*, 326 F. App'x 77 (3d Cir. 2009) ...................................... 14

*Florentino v. City of Newark*, No. 219CV21055, 2020 WL 5105291 (D.N.J. Aug. 31, 2020) ............................................................................................................................... 6

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ........................................................ 12, 13

*Golod v. Bank of Am. Corp.*, 403 F. App'x 699 (3d Cir. 2010) ...................................................... 7

*Grande Vill. LLC v. CIBC Inc.*, No. 14-3495, 3495, 2015 WL 1004236 (D.N.J. Mar. 6, 2015) ............................................................................................................................. 12

*Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903 (N.J. 1990) ....................................................... 5

*Hughes v. Allegheny Cty. Airport Auth.*, 728 F. App'x 140 (3d Cir. 2018) ................................. 11

*Itiowe v. Daniel*, No. 16-7777, 2017 WL 4179811 (D.N.J. Sept. 21, 2017) .................................. 8

*Knights Franchise Sys., Inc. v. P.C.P.S. Corp.*, No. 06-5243, 2009 WL 3526229 (D.N.J. Oct. 21, 2009), aff'd, 420 F. App'x 155 (3d Cir. 2011) .......................................... 14

*Lei Ke v. Drexel Univ.*, 645 F. App'x 161 (3d Cir. 2016) ........................................................... 10

*Mollo v. Passaic Valley Sewerage Comm'rs*, No. 07-1655, 2009 WL 5216976 (D.N.J. Dec. 30, 2009), *aff'd*, 406 F. App'x 664 (3d Cir. 2011) ..........................................................14

*Nahas v. Shore Med. Ctr.*, No. 13-6537, 2015 WL 3448021 (D.N.J. May 29, 2015) ....................8

*Ogunbayo v. Hertz Corp.*, 542 F. App'x 105 (3d Cir. 2013) ........................................................10

*Ortiz v. Reichhold, Inc.*, No. 2:13-cv-06641, 2014 WL 5406883 (D.N.J. Oct. 21, 2014) ...............8

*Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378 (3d Cir. 1999) ...............................................5

*Partovi v. Felician College*, No. A-1961-09T1, 2011 WL 867275 (N.J. Super. Ct. App. Div. Mar. 15, 2011) .........................................................................................................................7

*Perez v. Zagami, LLC*, 94 A.3d 869 (N.J. 2014) ..........................................................................11

*Roe ex rel. Roe v. Rutgers, State Univ. of New Jersey*, No. 13-1762, 2013 WL 3446456 (D.N.J. July 9, 2013) ................................................................................................................8

*Rueda v. Nexeo Sols., LLC*, No. 14-3801, 2015 WL 1472057 (D.N.J. Mar. 31, 2015) ..................9

*Santos v. Carrington Mortg. Servs., LLC*, No. 2:15-cv-864, 2015 WL 4162443 (D.N.J. July 8, 2015) ..................................................................................................................12

*Special Police Org. v. City of Newark*, No. 198444, 2019 WL 4410066 (D.N.J. Sept. 16, 2019) ..................................................................................................................................6, 8

*TMG Metal v. Okapi Consultants, LLC*, No. 11-cv-2253, 2011 WL 4900014 (D.N.J. Oct. 14, 2011) ..................................................................................................................................13

*Williams v. Wells Fargo Bank, N.A.*, No. 161003, 2016 WL 4370033 (D.N.J. Aug. 10, 2016) ..................................................................................................................................6, 8

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121 (N.J. 2001) ........................................................14

**STATUTES**

42 U.S.C. § 1981 ................................................................................................................1, 5, 8, 9

42 U.S.C. § 1983 ............................................................................................................................11

New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1–49 .............................1, 2, 5

New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1–2 ........................................................1, 11

# INTRODUCTION

Plaintiffs' claims for discrimination, retaliation, and breach of contract are wholly conclusory and are not supported by any well-pled facts. Defendants Bank of America, N.A. and Merrill Lynch (collectively, "BofA") move to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This action arises out of Plaintiffs' unauthorized attempt to use a BofA small business deposit account to disburse up to $100 million in loans, and BofA's subsequent closure of the account users' business and personal accounts for the same reasons—reasons which were communicated to and acknowledged at the time by Plaintiffs. Plaintiffs allege, without any factual support, that the account closures were motivated by animus against minorities and women. They assert discrimination and retaliation claims under 42 U.S.C. § 1981 ("Section 1981"), the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1–49 ("NJLAD"), and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1–2 ("NJCRA"), as well as a breach of contract claim regarding unspecified "banking and investment agreements."

Plaintiffs' inflammatory claims are meritless and have no basis in fact. The accounts were closed not due to any racial or gender animus, but because Plaintiffs were attempting to use their small business account to engage in banking and loan-making activities without prior authorization and in direct contravention of the Bank's policies. But in any event, Plaintiffs' Complaint fails under Rule 12(b)(6) because it does not plead adequately any of their claims. First, Plaintiffs do not allege that either they or the minority-owned businesses to whom they provided loans were treated differently from other, non-minority BofA customers, as they are required to do to establish an inference of race-based discrimination under either Section 1981 or

1

the NJLAD. Second, Plaintiffs cannot state a claim under the NJCRA because that statute creates a private right of action against only persons who are acting under color of law. Third, Plaintiffs' breach-of-contract claim fails to identify the contracts and the specific provisions allegedly breached and it pleads no facts that could support a claim for breach of the implied covenant of good faith. The Complaint should be dismissed in its entirety.

## BACKGROUND

BofA closed Plaintiffs' business and personal bank accounts following its investigation of suspicious activity involving one of those accounts. Compl. ¶ 35. Plaintiffs' lawsuit alleges, without any factual support whatsoever, that BofA closed the accounts for discriminatory and retaliatory reasons. Below is a summary of the allegations set forth in Plaintiffs' Complaint.

Plaintiffs are three companies and two individuals. The companies are MBE Capital Partners, LLC ("MBE"), Republic Group, LLC ("Republic"), and Reaching New Heights, Corp. ("Reaching New Heights") (collectively, the "company Plaintiffs"). The individuals are Rafael Martinez, a "Shareholder and Managing Member of Republic and MBE" and an Officer of Reaching New Heights, and Chelsea Martinez, an "Officer and authorized signatory on the bank accounts maintained" by all three companies (collectively, the "individual Plaintiffs"). *Id.* ¶¶ 11–12, 48. At issue in this litigation are business accounts held by Republic and Reaching New Heights and personal accounts held by Rafael and Chelsea Martinez.

Plaintiffs allege that MBE received approval from the Small Business Administration (SBA) to issue loans to small, diverse and minority-owned businesses as a participant in the Paycheck Protection Program (PPP).[1] *Id.* ¶ 19. Plaintiffs further allege that they "obtained the

---

[1] The PPP is part of the CARES Act, enacted in response to the national economic crisis caused by COVID-19. The program made available to small businesses more than $600 billion

2

funds necessary to manage and distribute $100,000,000 (One Hundred Million Dollars) PPP Loans to Small, diverse and Minority owned businesses," that they had those funds deposited into Republic's BofA business account, and that they began using this account to disburse PPP loans. *Id.* ¶¶ 20, 25–26.

On or about May 20, 2020, Plaintiffs allege that a customer of Republic and MBE, "who was a member of a minority group, tendered a duly authorized negotiable instrument to Bank of America for payment which was issued from the Republic account," *id.* ¶ 27, but BofA "refused to honor the check and instead humiliated and degraded the customer and client of Republic and MBE, claiming the check was fraudulent," *id.* ¶ 29. BofA thereafter froze the Republic account. *Id.* ¶ 30.

Plaintiffs then had a telephone discussion with BofA representatives during which Plaintiffs claim "[i]t was explained to Bank of America that MBE was an approved nonfinancial institution PPP lender in compliance with the Rules and Regulations set forth by the SBA" and that "the purpose of the program was to assist minority, women owned and small and diverse businesses in a time of crisis." *Id.* ¶¶ 32–33. Plaintiffs acknowledge that during the call BofA described its due diligence efforts and explained why it was "unable to support Republic Group Parts, LLC efforts to participate in the PPP program as an intermediary in the distribution of PPP Loans," *id.* ¶ 35, but do not provide any further details about the content of this call.

Plaintiffs allege that, either during this call or sometime thereafter (the Complaint does not specify), "Bank of America demanded all funds be transferred from their institution and refused to honor checks or electronic items presented for payment" from the Republic account.

---

in forgivable loans, disbursed to qualifying applicants by SBA-approved participating financial institutions.

*Id.* ¶ 36. In response, Mr. Martinez "forwarded written notice to Bank of America indicating he understood Bank of America's perceived issues," and Republic transferred the funds earmarked for PPP loans to another banking institution. *Id.* ¶¶ 37–38.

Thereafter, Plaintiffs allege BofA closed Republic's business account, the personal bank accounts of Raphael and Chelsea Martinez, and the business account of Reaching New Heights, a nonprofit of which the Martinezes were officers. *Id.* ¶¶ 41–45. Plaintiffs assert these actions were taken in retaliation against Plaintiffs as "minority and woman owned businesses whose management had the nerve to seek to defend its civil and contractual rights." *Id.* ¶ 46. Plaintiffs further allege that the decision to close the accounts "was based solely upon Republic and MBE being a minority and woman owned business whose customers are predominantly minority and women owned businesses and fueled by a minority consumer presenting a check to Bank of America for payment." *Id.* ¶ 39.

Based on these allegations, Plaintiffs bring claims for discrimination and retaliation in violation of Section 1981 (Counts I and II), discrimination in violation of the NJLAD (Count III), retaliation in violation of the NJCRA (Count IV), and breach of contract (Count V).

## ARGUMENT

Plaintiffs allege no facts to support their conclusory assertion that BofA's closure of their accounts was motivated by racist and sexist animus. Notably, Plaintiffs do not allege that they were treated differently from any other customers, or that BofA representatives ever made any statements to suggest race or sex discrimination. With regard to the "retaliation" claim, Plaintiffs do not allege that they ever complained to BofA about race or sex discrimination. And with regard to the breach-of-contract claim, Plaintiffs do not allege that they complied with BofA's policies, or that BofA acted in any way not authorized by the agreements that Plaintiffs

4

acknowledge govern the accounts. The Complaint's failure to allege even the most basic facts to support their allegations is fatal to all of Plaintiffs' claims.

I. **PLAINTIFFS FAIL TO STATE DISCRIMINATION CLAIMS UNDER SECTION 1981 AND THE NJLAD.**

Plaintiffs' discrimination claims under Section 1981 and the NJLAD are predicated on BofA's closure of Plaintiffs' accounts and an alleged incident involving a minority customer of Republic and MBE who sought to cash a check. *See* Compl. ¶ 39. The federal and state claims fail for the same reason: Plaintiffs allege no facts to show discriminatory animus or to suggest that they were treated differently from other BofA customers based on their race or gender.

Section 1981 "prohibits 'racial' discrimination in the making of private and public contracts." *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 385 (3d Cir. 1999). While Section 1981 does not permit claims based on gender discrimination, *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 98 (3rd Cir. 1999), the NJLAD recognizes claims for persons who are denied public accommodation or banking services on the basis of either race or sex. N.J. Stat. Ann. § 10:5-4; N.J. Stat. Ann. § 10:5-12(f)(1); N.J. Stat. Ann. § 10:5-12(i)(1).

Claims under both Section 1981 and the NJLAD are analyzed under the three-step *McDonnell Douglas* burden-shifting framework used for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2. *Pamintuan*, 192 F.3d at 385; *Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 907 (N.J. 1990). Under that framework:

> [(1)] [A] plaintiff must present sufficient evidence to support a prima facie case of discrimination. . . . [(2)] Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions[,] [and (3)] If the defendant satisfies this burden . . . the burden of production shifts back to the plaintiff who must come forward with admissible evidence showing that the defendants' articulated, nondiscriminatory reasons were not the true reasons for the adverse action, but merely a 'pretext for discrimination.'

5

*Elmiry v. Wachovia Corp.*, No. 04-3621PGS, 2007 WL 4117260, at *5–6 (D.N.J. Nov. 16, 2007) (citations omitted), *aff'd*, 410 F. App'x 560 (3d Cir. 2011).

Plaintiffs' Complaint fails at step 1, because it does not make out a prima facie case for discrimination. To state a claim under Section 1981, a plaintiff must allege facts to support: "'(1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts.'" *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (brackets and citation omitted). A race-based or sex-based discrimination claim under the NJLAD requires a similar showing.[2]

Plaintiffs' Complaint does not state a claim because it "does not set forth any facts to suggest that Plaintiffs were discriminated against based on their races or ethnicities" or their gender. *Special Police Org. v. City of Newark*, No. 198444, 2019 WL 4410066, at *3 (D.N.J. Sept. 16, 2019) (Wigenton, J.). In particular, they do not allege that they were treated differently from others not within a protected class. This is fatal to their claims under both laws. *See Williams v. Wells Fargo Bank, N.A.*, No. 161003, 2016 WL 4370033, at *4 (D.N.J. Aug. 10, 2016) (dismissing Section 1981 claim for failure to "establish that Defendant treated him 'differently than others outside of the protected class who were similarly situated'" (citation omitted)); *Partovi*, 2011 WL 867275, at *8 (affirming dismissal of NJLAD complaint because plaintiff "did not allege any facts that indicate that [she] was treated differently than other

---

[2] A plaintiff under the NJLAD "must (1) 'demonstrate that she is a member of a protected class'; (2) must 'show that the defendant's actions were motivated by discrimination'; and (3) must demonstrate that 'others not within the protected class did not suffer similar adverse actions.'" *Florentino v. City of Newark*, No. 19-cv-21055, 2020 WL 5105291, at *14 (D.N.J. Aug. 31, 2020) (alteration omitted) (quoting *Partovi v. Felician Coll.*, No. A-1961-09T1, 2011 WL 867275, at *7–8 (N.J. Super. Ct. App. Div. Mar. 15, 2011) (per curiam).

6

students based on her national origin or any other protected characteristic").

Plaintiffs allege that BofA refused to honor a check presented by one of their minority customers for suspected fraud and, without any supporting facts, that BofA "humiliated and degraded" the customer. Compl. ¶ 29. Plaintiffs also allege they had a telephone conversation with BofA representatives, during which they described their "purpose to assist minority, women owned and small and diverse businesses in a time of crisis," and that the subsequent closure of their accounts was "based solely upon Republic and MBE being a minority and woman owned business whose customers are predominantly minority and women owned businesses and fueled by a minority consumer presenting a check to Bank of America for payment." Compl. ¶¶ 33, 39. These conclusory allegations contain no facts that would allow the Court to infer that any of the conduct they allege was motivated by race or gender.[3]

Plaintiffs' plainly deficient allegations resemble the Section 1981 discrimination claims in *Golod v. Bank of Am. Corp.*, 403 F. App'x 699 (3d Cir. 2010), where the Third Circuit affirmed the grant of a motion to dismiss because the employee plaintiff did not allege "any characteristics of those individuals who received the promotions to which she alleges she was entitled" and "whether she was, in fact, qualified to fill those positions." *Id.* at 702. The court could not "infer from her allegations" that she was denied opportunities because of her Russian and/or Jewish heritage. *Id.*; *see also Special Police Org.*, 2019 WL 4410066, at *3 (dismissing Section 1981 claim for failure to allege "any facts to suggest that Plaintiffs were discriminated against based on their races or ethnicities"). Similarly, in *Williams*, 2016 WL 4370033, the court granted Wells Fargo's motion to dismiss, with prejudice, a Section 1981 claim alleging unfair

---

[3] Plaintiffs' allegations are especially conclusory as to Defendant Merrill Lynch, as to which the Complaint alleges nothing other than that Merrill forwarded a notice of account closure to Chelsea Martinez. Compl. ¶ 41.

7

lending terms, where the plaintiff only made "conclusory allegations" that Wells Fargo had provided prime loans with lower interest rates to similarly situated white borrowers. *Id.* at *4.[4]

Plaintiffs' conclusory allegations are equally deficient under the NJLAD. For example, in *Itiowe v. Daniel*, No. 16-7777, 2017 WL 4179811 (D.N.J. Sept. 21, 2017), the court dismissed an NJLAD claim brought by a customer who alleged that Walmart employees behaved in a "racist like" manner towards her, where the customer "d[id] not allege any facts suggesting that any of the Defendants discriminated against her based on any . . . protected categories, or at all." *Id.* at *1 n.3; *see also Ortiz v. Reichhold, Inc.*, No. 2:13-cv-06641, 2014 WL 5406883, at *4 (D.N.J. Oct. 21, 2014) (Wigenton, J.) (dismissing NJLAD claim because plaintiffs "merely claim[ed] that their termination of employment was based on their 'age, seniority status with the company and race'"); *Roe ex rel. Roe v. Rutgers Univ.*, No. 13-1762, 2013 WL 3446456, at *6 (D.N.J. July 9, 2013) (Wigenton, J.) (holding plaintiff's allegation that Rutgers permitted its employee "to target and exploit Plaintiff" based on his status as a disabled person was too conclusory to state a claim under the NJLAD). In short, Plaintiffs' allegations of discrimination are deficient on their face and should be dismissed.

## II.  PLAINTIFFS FAIL TO STATE RETALIATION CLAIMS UNDER SECTION 1981.

Section 1981 encompasses the claims of anyone who suffers retaliation for vindicating

---

[4] Plaintiffs' conclusory allegations are easily distinguished from successfully pleaded allegations of discrimination. *See, e.g., Nahas v. Shore Med. Ctr.*, No. 13-6537, 2015 WL 3448021, at *5 (D.N.J. May 29, 2015), *on reconsideration in part*, No. 13-6537, 2016 WL 1029362 (D.N.J. Mar. 15, 2016) (denying a motion to dismiss Section 1981 claims that "adequately pleaded [the plaintiff] was treated differently than other non-minority staff," identified several other, non-Arab doctors who were treated differently and what that treatment entailed, and "[u]nlike Plaintiff's original Complaint include[d] enough factual detail to allow the Court to infer that Defendants discriminated against Plaintiff on the basis of his Arab ancestry and ethnicity").

8

her rights under the statute, or "because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008)). To state a claim for retaliation under Section 1981, Plaintiffs "'must demonstrate that there had been an underlying section 1981 violation.'" *Rueda v. Nexeo Sols., LLC*, No. 14-3801, 2015 WL 1472057, at *2 (D.N.J. Mar. 31, 2015) (quoting *McHugh ex rel. Estate of Olivia*, 604 F.3d 788, 798 (3d Cir. 2010). Because Plaintiffs have not adequately pled an underlying Section 1981 violation for all the reasons described above, the retaliation claim necessarily fails. *See id.*

Plaintiffs also fail to plead facts supporting their retaliation claim. "To establish a prima facie case for retaliation under § 1981, a plaintiff must show by a preponderance of the evidence (1) that he engaged in a protected activity; (2) that he suffered an adverse action; and (3) that there was a causal connection between the protected activity and the adverse action." *Barker v. Our Lady of Mount Carmel Sch.*, No. 12-4308, 2016 WL 4571388, at *12 (D.N.J. Sept. 1, 2016); *see also Argentina v. Gillette*, 778 F. App'x 173 (3d Cir. 2019) (affirming dismissal of claim brought by former member of a city adult center that denied his membership renewal for failure to plead requisite elements).

Plaintiffs do not adequately allege that Plaintiffs engaged in any protected conduct contesting racial discrimination, much less that BofA retaliated against Plaintiffs for such protected conduct. The closest Plaintiffs come to alleging protected conduct is where they assert that the parties had a telephone call about Republic's account, during which Plaintiffs allegedly explained Republic's purpose of assisting minority- and women-owned businesses. Compl. ¶¶ 31–33. Plaintiffs acknowledge that during the call BofA offered its "due diligence"

9

efforts as a reason for being "unable to support Republic Group Parts, LLC efforts to participate in the PPP program as an intermediary in the distribution of PPP Loans." *Id.* ¶ 35. Plaintiffs allege that, after this call, their accounts were closed in "gratuitous retaliation," *id.* ¶¶ 41–45, and that "the retaliatory actions" confirm BofA's "discriminatory and retaliatory animus towards minority and woman owned businesses whose management had the nerve to seek to defend its civil and contractual rights," *id.* ¶ 46.

These allegations are plainly deficient to establish protected conduct. Plaintiffs provide no description of any allegedly protected conduct in which they engaged by phone. Although Plaintiffs suggest that they "defend[ed] [their] civil and contractual rights," *id.*, they do not explain what that defense consisted of. For example, they do not state that they identified or protested their alleged racially-discriminatory treatment during their conversation with BofA or that of their borrower clients. Without more, a telephone call merely describing the business purpose of an account holder is not protected conduct. *See Barker*, No. 12-4308, 2016 WL 4571388, at *13 (most complaints made by plaintiffs against school did not constitute protected conduct for purposes of Section 1981 retaliation claim because they "d[id] not mention race); *Lei Ke v. Drexel Univ.*, 645 F. App'x 161, 165 (3d Cir. 2016) (per curiam) (no protected conduct where plaintiff pointed to no record evidence that "would indicate that he complained to [the defendant] about racial discrimination"); *cf. Ogunbayo v. Hertz Corp.*, 542 F. App'x 105, 107 (3d Cir. 2013) (per curiam) (no protected conduct under the NJLAD where plaintiff's complaints of unfair treatment did not discuss protected characteristic, "let alone attempt[] to connect the alleged mistreatment to any such characteristic").

Further, "even assuming the Plaintiff[s] engaged in protected activity, [they] do[] not allege sufficient facts to show that any causal link existed" between the allege protected conduct

10

and the freezing and closure of their accounts. *Adams v. Hult*, No. 146820, 2019 WL 1399551, at *4 n.3 (D.N.J. Mar. 28, 2019) (dismissing Section 1981 retaliation claim). They allege only the conclusion that the accounts were closed "in gratuitous retaliation," Compl. ¶¶ 41–45, as opposed to for some other reason. *See, e.g.*, *Hughes v. Allegheny Cnty. Airport Auth.*, 728 F. App'x 140, 144 (3d Cir. 2018) (per curiam) (rejecting retaliation claim where three months passed between the allegedly protected conduct and adverse action because "the timing . . . is not suggestive of retaliation and the record is devoid of evidence supporting an inference of retaliatory animus").

For all of these reasons, Plaintiffs' claim for retaliation under Section 1981 should be dismissed.

**III.   PLAINTIFFS FAIL TO STATE RETALIATION CLAIMS UNDER THE NJCRA.**

The NJCRA is the New Jersey state law analogue to 42 U.S.C. § 1983. *Barron v. New Jersey*, No. 2:17-735, 2018 WL 324725, at *4 (D.N.J. Jan. 8, 2018). Like its federal counterpart, the statute creates a private right of action against only persons who act under color of law. *Cottrell v. Zagami, LLC*, 94 A.3d 878, 879 (N.J. 2014) (per curiam) (NJCRA claim failed for lack of state action); *Perez v. Zagami, LLC*, 94 A.3d 869, 877 (N.J. 2014) (same). Plaintiffs do not allege BofA is a state actor or otherwise acted under color of law, and thus they cannot state an NJCRA claim.

**IV.   PLAINTIFFS FAIL TO STATE CLAIMS FOR BREACH OF CONTRACT.**

Plaintiffs' breach of contract claims fail because they do not specify any contractual provision BofA breached. They also fail to state a claim for breach of the implied covenant of good faith and fair dealing, because they do not assert any facts to support "a bad motive or intention," nor do they allege that BofA engaged in any conduct not authorized under the Deposit Agreement governing the parties' BofA accounts.

11

### A. Plaintiffs do not plead a breach of any contractual provision.

To establish a prima facie case of breach of contract, Plaintiffs must show "(1) a contract [existed] between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).

Plaintiffs allege BofA breached "banking and investment agreements," Compl. ¶¶ 74, 78, but they do not specify what these agreements are or how they were breached. This is fatal to their breach of contract claim. *Grande Vill. LLC v. CIBC Inc.*, No. 14-3495, 2015 WL 1004236, at *5 (D.N.J. Mar. 6, 2015) ("Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached." "Failure to allege the specific provisions of contracts breached is grounds for dismissal." (quoting *Eprotec Pres., Inc. v. Eng'g Materials, Inc.*, No. 10–5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011)).

Nor could Plaintiffs allege any such breach. Plaintiffs' accounts are governed by a Deposit Agreement,[5] which gives BofA broad discretion to refuse checks and to freeze or close its customers' accounts. *See* Deposit Agreement at 2 ("You or we may close your checking or savings account at any time without advance notice . . ."), 51 ("If we decide to close your account, we may freeze it. If we do this, we may in our discretion either accept or return

---

[5] A copy of the Deposit Agreement is attached as Exhibit 1 to the Declaration of Chris Yuasa, filed with this Motion. This Court may consider the Deposit Agreement at the pleading stage because Plaintiffs incorporated it into their Complaint by reference. *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 512 n.1 (D.N.J. 2009) ("the Court may look to "indisputably authentic documents underlying the plaintiff's claims," such as the agreement upon which contract-based claims are based" (citation omitted), *aff'd*, 374 F. App'x 341 (3d Cir. 2010); *Santos v. Carrington Mortg. Servs.*, No. 15- cv-864, 2015 WL 4162443, at *11 (D.N.J. July 8, 2015) (construing letters provided by defendant with its motion to dismiss as incorporated into the complaint by reference, where plaintiff identified one infringing letter and mentioned "others more generally").

deposits, checks and other items that we receive after we freeze your account without being liable to you."). It also provides that if a person with a check from the account holder does not satisfy BofA requirements, "we may refuse to cash the check or accept it for deposit." *Id.* at 34.

As the terms of the Deposit Agreement emphasize, this discretion is built into the contract to ensure BofA's ability to halt, investigate and rectify suspicious activity:

> If at any time we believe that your account may be subject to irregular, unauthorized, fraudulent, or illegal activity, we may, in our discretion, freeze some or all of the funds in the account and in other accounts you maintain with us, and/or delay transactions, without any liability to you, until such time as we are able to complete our investigation of the account and transactions.

*Id.* at 51.

Plaintiffs make the conclusory assertion that BofA's handling of their accounts amounts to a breach of contract, but as the terms of the Deposit Agreement make clear, BofA has ample discretion to take the actions it allegedly took. Plaintiffs' breach of contract claim also fails because they do not "even summarily allege that [they have] performed [their] contractual obligations," *TMG Metal v. Okapi Consultants, LLC*, No. 11-CV-2253, 2011 WL 4900014, at *2 (D.N.J. Oct. 14, 2011) (dismissing breach of contract claim), much less allege any facts that would allow the court to assess their compliance with any contract, *see Frederico*, 507 F.3d at 204 (affirming dismissal of breach of contract claim under New Jersey law where plaintiff failed to plead the time of her attempted return of a rental vehicle as required to show she complied with rental agreement). Specifically, Plaintiffs do not allege that they complied with BofA requirements, or that they avoided any "irregular, unauthorized, fraudulent, or illegal activity," or the perception of such activity.[6]

---

[6] To the contrary, Plaintiffs acknowledge that they deposited $100 million into a small business account for purposes of distributing to numerous entities in small disbursements,

13

### B. Plaintiffs do not plead a breach of the implied covenant of good faith and fair dealing.

Plaintiffs' contract claim also fails to state a claim for breach of the implied covenant of good faith and fair dealing. Under New Jersey law, a claim for breach of the implied covenant requires the plaintiff to plead "a bad motive or intention." *Farash & Robbins, Inc. v. Fleet Bank*, 326 F. App'x 77, 81 (3d Cir. 2009). "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001). Plaintiffs do not come close to making the required showing.

First, Plaintiffs' claims for breach of the implied covenant are predicated on the same conclusory allegations of racist and sexist animus used to support their discrimination and retaliation claims, which fail for the reasons already stated. Without any facts to demonstrate that animus, Plaintiffs cannot establish the bad motive or intention required to show a breach of the implied covenant of good faith and fair dealing. *Knights Franchise Sys., Inc. v. P.C.P.S. Corp.*, No. CIV. 06-5243, 2009 WL 3526229, at *7 (D.N.J. Oct. 21, 2009), *aff'd*, 420 F. App'x 155 (3d Cir. 2011) (dismissing claim for breach of implied covenant based "on nothing more than conclusory assertions" that franchise representatives gave pretextual reasons for giving facility failing scores during inspections).

Second, Plaintiffs cannot show "bad motive or intention" where they fail to allege the bank engaged in any conduct that was not expressly authorized by the plain language of the "banking and investment agreements" they cite. Simply put, "the covenant of good faith cannot override an express term in the contract." *Mollo v. Passaic Valley Sewerage Comm'rs*, No. CIV.

---

Compl. ¶¶ 25-26, which plainly raises concerns of at least potential "irregular, unauthorized, fraudulent or illegal activity."

14

07-1655 DRD, 2009 WL 5216976, at *18 (D.N.J. Dec. 30, 2009), *aff'd*, 406 F. App'x 664 (3d Cir. 2011). As explained above, the Deposit Agreement makes clear that BofA is expressly authorized to exercise its discretion in suspending and closing accounts and declining to honor checks. Indeed, Plaintiffs acknowledge that BofA indicated that it closed Plaintiffs' business and personal bank accounts following its performance of "due diligence" into suspicious activity involving one of those accounts. Compl. ¶ 35.

In *Hassler v. Sovereign Bank*, for example, the district court dismissed a claim for breach of the implied covenant brought by a customer against a bank for its imposition of overdraft fees where the contract governing the parties' relationship "expressly authorize[d]" the bank to post customers' payment transactions in a particular order, and warned that this order could result in the incurrence of overdraft fees. 644 F. Supp. 2d 509, 518–19 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010). "[I]t does not satisfy the improper motive element of a good faith performance claim for a plaintiff to allege merely that [the opposing party] exercised the discretion expressly afforded to it under the agreement." *Id.* at 518; *see also Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 304 (D.N.J. 2019) (dismissing claim for breach of the implied covenant of good faith and fair dealing where plaintiffs' allegation that energy company's rate-setting was required to conform to a market-based variable rate was "not supported by the clear terms of the Agreement").

## CONCLUSION

For the foregoing reasons, BofA's motion to dismiss the Complaint should be granted.

Dated:  November 9, 2020              Respectfully submitted,

/s/ *Philip S. Rosen*
Philip S. Rosen
ZEICHNER ELLMAN & KRAUSE LLP
33 Wood Ave. South, Suite 110
Iselin, New Jersey 08830
Tel: (973) 618-9100
prosen@zeklaw.com

Enu A. Mainigi (*pro hac vice* admission pending)
Kenneth C. Smurzynski (*pro hac vice* admission pending)
Craig D. Singer (*pro hac vice* admission pending)
Jesse T. Smallwood (*pro hac vice* admission pending)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
emainigi@wc.com
ksmurzynski@wc.com
csinger@wc.com
jsmallwood@wc.com

*Attorneys for Defendants Bank of America, N.A. and Merrill Lynch*