## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

REPUBLIC GROUP, LLC, MBE CAPITAL PARTNERS, LLC, RAFAEL MARTINEZ, CHELSEA MARTINEZ AND REACHING NEW HEIGHTS, CORP.,

Civil Action No. 2:20-cv-12081-SDW-LDW

Plaintiffs,

v.

BANK OF AMERICA, N.A. AND MERRILL, LYNCH, A BANK OF AMERICA COMPANY, JOHN DOES 1-10 AND ABC CORP. 1-10 (BEING FICTITIOUS NAMES),

Defendants.

## PLAINTIFFS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS COMPLAINT

LAW OFFICES OF SHANNON GARRAHAN, P.C.

2 FOREST AVENUE-SECOND FLOOR

ORADELL, NEW JERSEY 07649

Phone:    (201) 909-0700

Facsimile: (201) 909-5110

Attorney for Plaintiffs

ON THE BRIEF:

Shannon Garrahan, Esq.

## TABLE OF CONTENTS

**Page Number**

TABLE OF AUTHORITIES.................................................................. iii-vi

INTRODUCTION............................................................................... 1

PROCEDURAL HISTORY................................................................... 3

JURISDICTION.................................................................................. 4

COUNTER-STATEMENT OF FACTS................................................... 4

STANDARD OF REVIEW FOR A MOTION TO DISMISS
PURSUANT TO RULE 12(b)(6)........................................................... 8

LEGAL ARGUMENT......................................................................... 11

**POINT I:**

THE PLAINTIFF'S COMPLAINT ADEQUATELY SETS
FORTH ALL OF THE ELEMENTS REQUIRED
BY 42 USC § 1981 AND THE DISCRIMINATION
CLAIM SHOULD NOT BE DISMISSED..................................................... 11

    A.    HISTORY OF 42 U.S.C. § 1981 ........................................... 11

    B.    PLAINTIFFS HAVE SATISFIED THE PLEADING
        REQUIREMENTS IN ORDER TO SURVIVE A 12
        (b)(6) MOTION TO DISMISS SINCE THE WELL
        PLEADED FACTS IN THE COMPLAINT ARE
        SUFFICIENTLY DETAILED TO STATE A
        CLAIM FOR DISCRIMINATION PURSUANT TO
        42 U.S.C. § 1981................................................................... 17

**POINT II:**

PLAINTIFFS HAVE SATISFIED THE PLEADING
REQUIREMENTS IN ORDER TO SURVIVE A 12(b)(6)
MOTION TO DISMISS SINCE THE WELL PLEADED
FACTS IN THE COMPLAINT ARE SUFFICIENTLY
DETAILED TO STATE A CLAIM UNDER THE NEW
JERSEY LAW AGAINST DISCRIMINATION........................................... 21

## TABLE OF CONTENTS

**Page Number**

**POINT III:**

PLAINTIFFS HAVE SATISFIED THE PLEADING
REQUIREMENTS IN ORDER TO SURVIVE A 12(b)(6)
MOTION TO DISMISS SINCE THE WELL PLEADED
FACTS IN THE COMPLAINT ARE SUFFICIENTLY
DETAILED TO STATE A CLAIM FOR RETALIATION
UNDER 42 U.S.C. § 1981 ............................................................ 24

**POINT IV:**

THE PLAINTIFFS HAVE ADEQUATELY PLEADED
A CLAIM FOR BREACH OF CONTRACT ............................................. 31

**POINT V:**

THE PLAINTIFFS CONSENT TO THE VOLUNTARY
DISMISSAL OF COUNT FOUR OF THE COMPLAINT
AND SHOULD BE PERMITTED TO AMEND THE
COMPLAINT TO CONFORM WITH THE
PLEADING REQUIREMENT AS NECESSARY ................................... 34

CONCLUSION ......................................................................... 35

## TABLE OF AUTHORITIES

**CASES**
                                                                                  **Page**

*Amoco Prod. Co. v. Heimann*, 904 F.2d 1405 (10th Cir.1990)................................33

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990).............................31

*Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003) ...........................................16

*Ashcroft v. Igbal*, 556 U.S. 662 (2009)........................................................................9

*Baldwin County Welcome Center v. Brown*, 466 U.S. 147........................................8

*Barber v. CSX Distribution Services*, 68 F.3d 694 (3d Cir. 1995)...........................26

*Bell Atlantic v. Twombly*, 550 U.S. 554 (2007)..........................................................9

*Bergen Commercial Bank v. Sisler*, 157 N.J. 188 (1999)..........................................23

*Bogosian v. Gulf Oil Corp.* 562 F.2d. 434 (3ʳᵈ Cir. 1977).........................................8

*Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264
(4th Cir. 2015)(enbanc)..............................................................................................25

*Brown v. Phillip Morris, Inc.,* 250 F3d 789 (3rd Cir. 2001)....................................12,17

*Brunswick Hills Raquet Club, Inc. v. Route 18 Shopping Center Assoc.*,
182 N.J. 210 (2005). ...................................................................................................32

*Callwood v. Dave & Buster's, Inc.*, 98 F. Supp. 2d 694 (D. Md. 2000)....................16

*CBOCS West, Inc. V. Humphries*, 553 U.S. 442 (2008)...........................................26-27

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001)....................................................24-25

*Conley v. Gibson,* 355 U.S. 41 (1957).......................................................................10

*Crawford v. Metro Gov't of Nashville & Davidson Cnty Tenn.,*
555 U.S. 271 (2009)................................................................................................. 25-26

Curay-Cramer v. Ursuline Academy, 450 F.3d 130 (3d Cir. 2006).............................26

## TABLE OF AUTHORITIES

**CASES**                                                                                           **Page**

*D.P. Enter. Inc. v. Bucks County Community College*, 725 F.2d 943
(3d Cir. 1984).................................................................................................9

*EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008 (9th Cir. 1983)...........................26

*Estate of Oliva ex.rel. McHugh v. New Jersey*, 604 F.3d 788
(3rd Cir. 2010). ........................................................................................16,17,24-25

*Evancho v. Fisher,* 423 F.3d 347 (3rd Cir. 2005)........................................................8

*Fletcher-Harlee Corp. v. Pote Concrete Contractors*, Inc. 482 F.3d 251
(3rd Cir. 2007).. ..................................................................................... 34-35

*Franek v. Tomahwk Lake Resort*, 333 N.J. Super. 206
(App. Div. 2000)...........................................................................................22

*Garrett v. Tandy Corp.,* 295 F.3d 94 (1st Cir. 2002)..................................................11,12,16

*Hampton v. Dillard Dept. Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001).....................15

*Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998)..............................27

*Hedges v. U.S.*, 404 F.3d 74  (3rd Cir. 2005)..............................................................10

*Hughes v. T.D. Bank, N.A.* 856 F.Supp.2d 673 (D.N.J. 2012)...................................33

*In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410
(3d Cir. 1997)...........................................................................................10

*In re Checking Account Overdraft Litigation*, 694 F.Supp.2d 1302
(S.D.Fla.2010) ......................................................................................... 33

*Jones v. Alfred H. Mayer Co.*, 392 U.S. 409 (1968)................................................. 11-13

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250
(3rd Cir. 1994)..........................................................................................9, 10-11

*L.W. v. Toms River Reg. School Bd.*, 381 N.J.Super. 465
(App.Div. 2005)..................................................................................... 22-23

*Lehman v. Toys R Us, Inc.*, 132 N.J. 587 (1993)................................................. 22

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                    <u>Page</u>

*Mahone v. Waddle*, 564 F.2d 1018 (3d Cir. 1977).............................................. 12

*Moore v. City of Philadelphia*, 461 F. 3d 331 (3d Cir. 2006)............................ 24-25,27,31

*Morse v. Lower Merion School District*, 132 F.3d 902 (3rd Cir. 1997)............. 8,9

*Patterson v. McLean Credit Union,* 491 U.S. 164 (1989)................................. 13-16

*Payton v. New Jersey Turnpike Authority*, 148 N.J. 524 (1997)....................... 22

*Philips v. County of Allegheny*, 515 F.3d. 224 (3rd Cir. 2008)......................... 10

*Quiroga v. Hasbro, Inc.*, 934 F.2d 497 (3d Cir. 1991)...................................... 25

*Rivers v. Roadway Express, Inc.*, 511 U.S. 298 (1994) .................................... 16

*Runyon v. McCrary*, 427 U.S.160 (1976)........................................................... 13

*Scheuer v. Rhoades*, 416 U.S. 232 (1974).......................................................... 9

*Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194 (1st Cir. 1996).................................. 10

*Seidenberg v. Summit Bank*, 348 N.J. Super. 243 (App.Div. 2002)................... 32

*Sons of Thunder v. Borden, Inc.*, 148 N.J. 396 (1997)....................................... 31

*Sumner v. United States Postal Service*, 899 F.2d 203 (2d Cir. 1990).............. 26

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)......................................... 21

*Turner v. Wong*, 363 N.J. Super. 186 (App. Div. 2003).................................... 22-24

*Waddell v. Small Tube Prod. Inc.*, 799 F.2d 69, 73 (3d Cir. 1986)................... 25

## STATUTES

42 U.S.C. § 1981 ........................................................................... 1,4,11-17,21
24-31

## TABLE OF AUTHORITIES

### STATUTES

Page

28 U.S.C. § 1331................................................................................. 4

28 U.S.C. § 1367................................................................................. 4

N.J.S.A. 10:5-1................................................................................. 1, 21-23

### COURT RULES

Fed. R. Civ. P. 8(a)(2)......................................................................8

Fed. R. Civ. P. 12 (b)(6)..................................................................1,4,8,9,17,
21,24,33

### SECONDARY SOURCES

23 Williston on Contracts § 63:22 (4th ed.)......................................33

## **INTRODUCTION**

The plaintiffs, Republic Group, LLC (Hereinafter referred to as "Republic"), MBE Capital Partners, LLC (Hereinafter referred to as "MBE"), Rafael Martinez and Chelsea Martinez filed a Complaint on August 31, 2020, alleging defendants Bank of America, NA and Merrill Lynch, a Bank of America Company (hereinafter collectively referred to as "BofA") discriminated and acted in a retaliatory manner toward the defendant's based upon their race and national origin in violation of 42 U.S.C. § 1981 ("§ 1981") and N.J.S.A. 10:5-1, et.al., The New Jersey Law Against Discrimination ("NJLAD") as well claims for breach of contract.

BofA has filed the within motion to dismiss the Complaint asserting the defendants have failed to state a claim under which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As set forth in the Complaint, Republic and MBE are minority owned Limited Liability Corporations. Rafael Martinez is a black man of Dominican descent and Chelsea Martinez is the daughter of Rafael being a black woman of Dominican descent. Rafael and Chelsea are accordingly members of a protected class within the meaning of 42 U.S.C. § 1981, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq.

Briefly, in May 2020 MBE and Republic were granted authority

1

by the Small Business Association to distribute funds pursuant to the Paycheck Protection Program which was created under the CARES Act in an effort to assist minority businesses and individuals during the COVID crisis.   Plaintiff issued a check to a minority client who was black.   The check was tendered by the client in an effort to cash the check at a Bank of America branch.    The client reported to Rafael Martinez that he was humiliated and disgraced and denied access to the funds which were available in Republics BofA account.   Thereafter a telephone conference to determine the source of the problem was held between representatives of BofA along with Martinez and the CEO of Republic and Martinez, Carra Wallace, a black woman.    During this conference call Rafael and Martinez and Carra Wallace explained that MBE was granted authority by the SBA to disburse PPP Loans as a non financial institution PPP Lender.   BofA was advised that the funds in the account were earmarked for minority owned businesses who had previously been unable to obtain PPP loans through financial lending institutions.    BofA requested the funds be removed from the account claiming "it was unable to support Republic's efforts to participate in the PPP program".   The plaintiffs complied and transferred the funds to another banking institution and successfully distributed 100,000,000 to minority and women owned businesses and individuals in accordance with the PPP program.

On August 10, 2020, more than a month after the PPP funds were transferred from the BofA account, BofA sent notice to the defendants that their accounts would be restricted from use in 21 days and permanently closed 30 days after.  These notices were sent to Rafael Martinez for his personal account, Reaching New Heights, a NJ Nonprofit Corporation, and Republic as well as Chelsea Martinez's personal account with Merrill.

Contrary to the assertions set forth in the defendant's memorandum, at no time were Rafael Martinez, Chelsea Martinez or Reaching New Heights advised that their account was under review or there was any issue with their use of the accounts.  The only issue raised by BofA regarding the Republic account was that BofA did not wish to participate as an intermediary in Republic's distribution of PPP loans to minority businesses and individuals. The funds were removed from the BofA account after reconciliation and no further issues were raised by BofA until they sent notices of intent to limit access and close the accounts.  There was never any investigation or 'due diligence' inquiry into the accounts of Rafael Martinez, Chelsea Martinez or Reaching New Heights.

## PROCEDURAL HISTORY

On August 31, 2020, Plaintiffs filed a Complaint in the United States District Court for the District of New Jersey.

On November 9, 2020, the defendants filed the within Motion

3

to Dismiss pursuant to R. 12 (b)(6) of the Federal Rules of Civil Procedure in lieu of Answer based upon the purported failure to state a claim upon which relief can be granted.

The defendants submit that the  facts, as pled, sufficiently set forth causes action for Discrimination and Retaliation in violation of 18 U.S.C. § 1981, the New Jersey Law Against Discrimination as well as claims for breach of Contract.

## JURISDICTION

This Court has jurisdiction over the plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

## COUNTER-STATEMENT OF FACTS

Plaintiff, Rafael Martinez, is a black man of Dominican descent.  Plaintiff, Chelsea Martinez is a black woman of Dominican descent and the daughter of Rafael Martinez.  Rafael Martinez formed MBE Capital Partners, LLC doing business as and and a Division of Republic Group, LLC for the business purpose of providing cash flow, loans and investment opportunities to small and diverse minority businesses and individuals.  Rafael and Chelsea formed Reaching New Heights, a non profit corporation. Rafael, Republic and Reaching New Heights maintained accounts with Bank of America until August 2020 when the accounts were closed by the defendant.  Chelsea maintained an account with

Merrill until September 2020 when the account was closed by
Merrill.

Republic opened a business account with BofA on February 7,
2018. (See Declaration of Chris Yucas € 6).   There were no
issues with the use of the business account until May 2020 when
$ 100,000,000 was transferred into the Republic business account
at BofA and Republic and MBE began disbursing millions of
dollars.  (See Comp. € 25).   Republic and MBE began
distributing funds to small, diverse, minority and woman owned
businesses in May 2020.

On May 20, 2020, Republic and MBE received a complaint from a
client who is a black man.  The client presented a check at a BofA
branch which was issued from the Republic account.  BofA refused to
honor the check and instead degraded and humiliated the client
claiming the check was fraudulent.  (See Comp. € 29).

The same day BofA notified Rafael Martinez that the Republic
business account had been frozen pending investigation and due
diligence.  (See Comp. € 30).   The obvious result of BofA
freezing the business account was that the PPP loans which had
been disbursed to small, diverse, woman and minority owned
businesses were unpaid and declined by BofA despite sufficient
funds being in the account.   (See Comp. € 35 & 36).

A telephone conference was held with BofA representatives
and Rafael Martinez and Republic CFO, Carra Wallace in an attempt

5

to rectify the purported issues. (See Comp. € 31). During the conversation it was explained to BofA that MBE is a minority owned and operated business that been by approved as a non-financial institution by the Small Business Administration for the purpose of providing PPP Loans to minority owned small businesses and individuals. (See Comp. € 32 & 33 ).   BofA claimed they did not want to act an intermediary for minority loans and requested the funds be removed from the Republic Account.  (See Comp. € 35 & 36).

Republic complied, transferred the PPP funds in May/early June and Rafael Martinez forwarded an e-mail to BofA indicating that he understood BofA's perceived issues but wished to maintain his personal, business and family accounts with BofA, including the Republic Account. (See Comp. € 37).  MBE subsequently funded PPP Loans through another banking institution and the program was a success distributing $ 100,000,000 in PPP Loans to a historically under-represented group of minority owned businesses and individuals. (See Comp. € 38).

On August 10, 2020, more than sixty days after the PPP funds had been transferred from the BofA account, BofA forwarded notice to Republic that its business account with BofA would be restricted in 21 days and closed in 30 days.  (See Comp. € 45 and Exhibit B annexed to the Certification of Rafael Martinez).

On August 10, 2020, BofA forwarded notice to Rafael Martinez

6

that his personal bank account would be restricted in twenty one days and closed in thirty days.  (See Comp. € 43 and Exhibit A annexed to the Certification of Rafael Martinez).

On August 3, 2020, Chelsea Martinez received a letter from defendant, Merrill, a Bank of America Company, that her account was being closed in thirty days.  (See Comp. € 41 and Exhibit A of Chelsea Martinez Certification).

Chelsea Martinez and Rafael Martinez are Officers of Reaching New Heights, a non-profit corporation.   (See Comp. € 44).   On August 10, 2020, BofA forwarded notice to Reaching New Heights that its account would be restricted from use in 21 days and closed in 30 days. (See Comp. € 44 and Exhibit B annexed to Chelsea Martinez Certification).

Based on the facts stated above and as more fully set forth in the Plaintiff's Complaint, Republic, MBE, Rafael Martinez, Chelsea Martinez and Reaching New Heights avers that they were the victim of racial retaliation, profiling and/or racial discrimination and that but for the disclosure that Republic and MBE are minority owned businesses embarking on a program to assist minority clients they would not have been treated in this discriminatory manner.

## STANDARD OF REVIEW FOR A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

When considering a Motion to dismiss a claim for failure to state claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12 (b)(6), a court must accept as true all well-pleaded allegations in the complaint as true and view them most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347 (3rd Cir. 2005).   It is well settled that a pleading is sufficient if it contains "a short plain statement of the claim showing that the pleader is entitled to relief'.  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all of the facts that serve as the basis for the claim.   Bogosian v. Gulf Oil Corp. 562 F.2d. 434, 446 (3rd Cir. 1977).   Although the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Baldwin County Welcome Center v. Brown, 466 U.S. 147, 149-150 (1984).

In the case of Morse v. Lower Merion School District, 132 F.3d 902, 906 (3rd Cir. 1997), the court commented "when considering a Rule 12(b)(6) motion, we are required to accept

8

as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Id., See Also, Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3rd Cir. 1994)("In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record"). In sum, the Morse court stated that a motion to dismiss should only be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'" Id. (citing, D.P. Enter. Inc. v. Bucks County Community College, 725 F.2d 943, 944 (3d Cir. 1984).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Bell Atlantic v. Twombly, 550 U.S. 554, 568 n. 8 (2007) (quoting, Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); See Also, Ashcroft v. Igbal, 556 U.S. 662, 678 (2009) "our decision in Twombly expounded the pleading standard for all civil actions." Thus the Supreme Court's Twombly formulation of the pleading standard can be summed up by stating that a claim requires a complaint with enough factual matter (taken as true) to suggest the required

element.  This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.  <u>Philips v. County of Allegheny</u>, 515 F.3d. 224, 234 (3rd Cir. 2008).  The defendant bears the burden of showing that no claim has been presented. <u>Hedges v. U.S.</u> 404 F.3d 744, 750 (3rd Cir. 2005).

For purposes of considering a Motion to Dismiss the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to plaintiff.  <u>Phillips v. Cty. of Allegheny</u>, 515 F.3d 224, 228 (3d Cir. 2008).  Furthermore, the Court also considers any "document integral to or explicitly relied upon in the complaint."  <u>In re Burlington Coat Factory Secs. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting, <u>Shaw v. Dig. Equip. Corp.</u>, 82 F.3d 1194, 1220 (1st Cir. 1996)).

The United States Supreme Court has held that a moving party on a motion to dismiss should only prevail where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim (which) would entitle him to relief."  <u>Conley v. Gibson,</u> 355 U.S. 41, (45-46) (1957); See Also, <u>Jordan</u>, 20 F.3d at 1261 ("a case should not be dismissed for failure to state a claim unless it *clearly* appears that no relief can be granted under any set of facts

that could be proved consistently with the plaintiff's allegations.").

Based only upon the facts set forth in the complaint and the undisputed business records as well as drawing all reasonable inferences therefrom, plaintiff's have stated a claim pursuant to 42 U.S.C. § 1981, the NJLAD as well claims for breach of contract.

## LEGAL ARGUMENT

## POINT I

## THE PLAINTIFF'S COMPLAINT ADEQUATELY SETS FORTH ALL OF THE ELEMENTS REQUIRED BY 42 USC § 1981 AND THE DISCRIMINATION CLAIM SHOULD NOT BE DISMISSED.

### A.   History of 42 U.S.C. § 1981

The law currently codified at 42 U.S.C. § 1981 was originally derived from Section 1 of the Civil Rights of Act of 1866.  Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).   The 1866 legislation provided, in part, as follows:

> Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that all persons born in the United States and not subject to any foreign power, ...  are hereby declared to be citizens of the United States; and such citizens, of every race and color, without regard to any previous condition of slavery or involuntary servitude...shall have the same right, in every State and Territory in the United States, to make and enforce contracts ...and to full and equal benefit of all laws and proceedings for the security of person and property,

11

as is enjoyed by white citizens.  <u>Jones v. Alfred H.</u>
<u>Mayer Co.</u>, 392 U.S. 409, 422 (1968)(quoting The
Civil Rights Act of 1866, Pub. L. 90284, 82 Stat.
73).

Congress enacted The Civil Rights Act of 1866 for the
specific purpose of eradicating the badges and incidents of
slavery as directed by the Thirteenth Amendment to the United
States Constitution.  <u>Brown v. Phillip Morris, Inc.</u>, 250 F3d
789, 797 (3rd Cir. 2001)("The legislative history of the 1866
Act makes clear Congress' intent to enact 'sweeping
legislation implementing the thirteenth amendment to abolish
all the remaining badges and vestiges of the slavery
system.")(citing, <u>Mahone v. Waddle</u>, 564 F.2d 1018, 1030 (3d
Cir. 1977).  However, the Civil Rights Act of 1866 was not
intended to prohibit all acts of racial discrimination; but,
instead, to eliminate discrimination within the scope of the
activities set forth in the statute.  See <u>Garrett</u>, 295 F.3d
at 98 (commenting that Section 1 of the Civil Rights Act of
1866 "now codified in 42 U.S.C. § 1981, prohibits
discrimination in certain specified activities (including the
making and enforcing of contracts").

The question of whether 42 U.S.C. § 1981 applied to
purely private conduct was first addressed by the Supreme
Court in the case of <u>Jones v. Alfred H. Mayer Co.</u>, 392 U.S.
409, 422 (1968).  In <u>Jones</u>, the Court unequivocally held that

purely private acts of discrimination may fall within the prohibitions set forth in the statute. Id.

Specifically, in considering Section 1982, the Court commented that "when Congress provided in § 1 of the Civil Rights Act that the right to purchase and lease property was to be enjoyed equally throughout the United States by Negro and white citizens alike, it plainly meant to secure that right against interference from any source whatever, whether governmental or private.") Id.; See also Runyon v. McCrary, 427 U.S.160, 170 (1976)(Recognizing that the Jones "holding necessarily implied that the portion of § 1 of the 1866 Act presently codified at 42 U.S.C. § 1981 likewise reaches purely private acts of racial discrimination.").

The Jones and Runyon decisions firmly established that 42 U.S.C. § 1981 extended to wholly private acts of racial discrimination in the making and formation of contracts. However, in Patterson v. McLean Credit Union, 491 U.S. 164 (1989), the Supreme Court took an exceedingly narrow view of the protections afforded by the federal statute. Essentially, the court held that the statute only protected the right to make a contract and the right to legally enforce a contract, but did not extend to racially motivated discriminatory conduct during the performance of the contract or otherwise arising from the contractual relationship. Id. at 177.   In

13

discussing the two protections provided by the federal

statute in an employment context, the Court commented:

> The first of these protections extends
> only to the formation of a contract, but
> not to problems that may arise later from
> the conditions of continuing employment.
> The statute prohibits, when based on race,
> the refusal to enter into a contract with
> someone, as well as the offer to make a
> contract only on discriminatory terms.
> But the right to make contracts does not
> extend, as a matter of either logic or
> semantics, to conduct by the employer
> after the contract relation has been
> established, including the breach of the
> terms of the contract or imposition of
> discriminatory working conditions. Id. at
> 176-77.
>
> The second of these guarantees, 'the
> same right to.... enforce contracts....as
> is enjoyed by white citizens,' embraces
> protection of a legal process, and of a
> right of access to legal process, that
> will address and resolve contract-law
> claims without regard to race.

In sum, the Patterson Court held that 42 U.S.C. § 1981

did not provide a remedy for an African-American woman who

was the victim of racial harassment creating a hostile work

environment because such conduct did not affect the formation

of the contract or the legal right to enforce the contract.

Id. at 179 ("This type of conduct (referring to the racial

harassment suffered by plaintiff), reprehensible though it

may be if true, is not actionable under § 1981, which covers

only conduct at the initial formation of the contract and

14

conduct which impairs the right to enforce contract obligations through legal process.").

In response to the Patterson decision, Congress enacted the Civil Rights Act of 1991. 42 U.S.C. § 1981.  The revised Act expressly repudiated the Patterson decision and clarified that the Act prohibited all forms of racial discrimination in the making and formation of contracts which specifically included "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id.; See Also, Hampton v. Dillard Dept. Stores, Inc., 247 F.3d 1091 (10th Cir. 2001)(Commenting that the revised § 1981 "was a response to 'a series of recent decisions addressing employment discrimination claims' where 'the Supreme Court cut back dramatically on the scope and effectiveness of civil rights protections' and that the purpose of the act is 'to respond to the Supreme Court's recent decisions by restoring the civil rights protections that were dramatically limited by those decisions.'") (citing S. Rep. No. 101-315 (1990)).

The courts have recognized that the revised version of 42 U.S.C. § 1981 extends beyond the mere formation and legal enforceability of a contract, but, instead applies to any form of discrimination affecting the contractual

15

relationship. See, Garrett, 295 F.3d at 100 ("The 1991 expansion of the definition of 'make and enforce contracts' in § 1981, then, extends the reach of the statute to situations beyond the four corners of a particular contract; the extension applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship."); Arguello v. Conoco, Inc., 330 F.3d 355, 360(5th Cir. 2003) ("The enactment of § 1981(b) was an explicit rejection of Patterson, in which the Court had refused to impose liability for discriminatory conduct occurring after the formation of an employment contract.  The new provision displaced Patterson's understanding of § 1981 by expanding the statute's reach to 'all phases and incidents of the contractual relationship.'")(citing Rivers v. Roadway Express, Inc., 511 U.S. 298 (1994)); Callwood v.Dave & Buster's, Inc., 98 F. Supp. 2d 694 (D. Md. 2000)("The legislative history of the Civil Rights Act of 1991 reveals that in amending section 1981 Congress reaffirmed the view that § 1981 is 'a critically important tool used to strike down racially discriminatory practices in a broad variety of contexts.'") (citing H. Rep. No. 102-40, pt. I, at 92 (1991).

16

**B.   PLAINTIFFS HAVE SATISFIED THE PLEADING REQUIREMENTS IN ORDER TO SURVIVE A 12(b)(6) MOTION TO DISMISS SINCE THE WELL PLEADED FACTS IN THE COMPLAINT ARE SUFFICIENTLY DETAILED TO STATE A CLAIM FOR DISCRIMINATION PURSUANT TO 42 U.S.C. § 1981.**

It is well established that in order to set forth a prima facie case under 42 U.S.C. § 1981, Plaintiff must show that (1) they are a member of a racial minority, (2) the defendant intended to discriminate against them on the basis of race, and (3) the discriminatory conduct concerned "one or more of the activities enumerated in § 1981, which includes the right to make and  enforce contracts." Brown v. Philip Morris, Inc, 250 F3d 789, 797 (3d Cir. 2001).  See Also, Estate of Oliva ex.rel. McHugh v. New Jersey, 604 F.3d 788, 797,798 (3rd Cir. 2010).

For purposes of the present motion to dismiss, the defendants argue that the plaintiffs have not set forth sufficient facts to sustain the burden because the plaintiffs fail to allege that they were treated differently from other customers.

The following facts are set forth in the plaintiff's complaint regarding the claim of discrimination in violation of § 1981:

> Republic, MBE and Rafael Martinez, who is of Dominican descent, also recognized that there are shockingly few minority owned financial managers in the services industry, and in New Jersey in particular.  Even those that did exist faced

17

numerous roadblocks due to institutional racism that
continues to permeate the financial field, tilting
the playing field substantially against white-owned
competitor funds.  See Comp. € 17.


Rafael Martinez believed that by creating cash
flow vehicles for small and diverse businesses, he
could set himself, MBE and Republic apart and create
a roadmap for future minority and women owned small
and diverse businesses to gain a foothold in their
profession which has traditionally been dominated by
white men.  See Comp. € 18.


In the midst of a National Pandemic, MBE was
granted approval by the U.S.S.B.A. to issue Paycheck
Protection Program Loans to a traditionally under-
represented class of small, diverse and minority
owned business.  See Comp. € 9.


On or about May 20, 2020, a customer, who is a
member of a minority group, tendered a duly
authorized negotiable instrument to Bank of America
for payment from the Republic account.  See Comp. €
27.


Bank of America was notified that the purpose
of the program was to assist minority, women owned
and small and diverse businesses in a time of
crisis.  See Comp. € 32.

MBE and Republic are minority owned businesses.
See Comp. € 33.


Bank of America refused to honor checks or
electronic payments presented against the account of
Republic Group despite sufficient funds being
available. See Comp. € 35.


Bank of America demanded all funds be
transferred from their institution and refused to
honor checks or electronic items presented for
payment which Republic Group had issued for the

18

purpose of providing desperately needed funding to
small, diverse, women and minority businesses.  See
Comp. € 37.


     The discriminatory decision was based solely
upon Republic and MBE being a minority and woman
owned business whose customers are predominantly
minority and women owned businesses fueled by a
minority customer presenting a check to Bank of
America for payment.  See Comp. € 39.
 Contrary to the defendants assertion that the

plaintiffs have failed to set forth that they were treated

differently from others in a protected class, the plaintiffs

complaint alleges they participated in this program due to a

recognition that the financial industry and the PPP loan

program have been dominated by white males and their program

was geared toward serving a traditionally under-represented

class of minority owned businesses and individuals.

     The complaint also sets facts which disclose that a

telephone conference was conducted with BofA in order to

determine the source of the problem and reason payments were

being declined despite sufficient funds in the account.

     During this telephone conversation it was explained to

BofA that Republic and MBE are minority owned businesses and

their participation in the PPP program was to provide loans

to minority businesses and individuals.  BofA responded that

they were 'unable to support Republic Group's efforts to

participate in the PPP program as an intermediary in the

distribution of PPP Loans'.  BofA did not claim, nor do they

argue in their brief, that they could not act as an intermediary for PPP Loans; they stated that they could not support Republic's efforts to participate in the PPP program.

Clearly the facts as set forth state a claim for relief as the plaintiff's have pled that they are a minority owned business; the defendant, Bank of America, failed to honor payments from the account based upon Republic's representation that the PPP Loans were intended for minorities and the discriminatory conduct of declining payments based upon the status of MBE as a minority owned business, servicing minority customers, who were entitled to payment as evidenced by sufficient funds in the Republic account.

There has been no claim that Bank of America could not participate as an intermediary in the PPP Program.  In fact, Bank of America did not argue that they could not act as an intermediary in the PPP Program based upon some regulation or contractual provision but instead stated they could not act as an intermediary for 'Republic's efforts to participate in the program[1]' after they were notified that Republic was a minority owned business servicing minority businesses and

[1]The defendant's brief inaccurately characterizes paragraph 35 of the plaintiff's complaint as alleging an investigation following suspicious activity involving one of the accounts.  There was no suspicious activity.  The account was frozen after the account was credited 100,000,000 and a minority customer presented a check for payment.  There is nothing suspicious about these activities.

individuals.

The United States Supreme Court has held that a discrimination complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief". <u>Swierkiewicz v. Sorema, N.A.</u>, 534 U.S. 506 (2002). The plaintiffs submit that they have met the standard and have set forth sufficiently detailed facts which entitle them to relief pursuant to S 1981.

<b><u>POINT II</u></b>

<b><u>PLAINTIFFS HAVE SATISFIED THE PLEADING REQUIREMENTS IN ORDER TO SURVIVE A 12(b)(6) MOTION TO DISMISS SINCE THE WELL PLEADED FACTS IN THE COMPLAINT ARE SUFFICIENTLY DETAILED TO STATE A CLAIM UNDER THE NEW JERSEY LAW AGAINST DISCRIMINATION.</u></b>

The defendants argue that for the same reasons plaintiffs have failed to set forth a claim for relief pursuant to § 1981 the plaintiffs have also failed to set forth a claim for relief under the New Jersey Law Against Discrimination. They argument is premised on the assumption that the NJLAD is substantively identical to 41 U.S.C. § 1981.  This assumption, as will be shown, is incorrect.

The NJLAD provides, in pertinent part, that:

It shall constitute unlawful discrimination:

For any owner, lessees, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of

21

the accommodations, advantages, facilities or
privileges thereof, or to discriminate against any
person in the furnishing thereof...<u>N.J.S.A.</u> 10:5-1.

New Jersey courts have recognized that the purpose of the
NJLAD is "nothing less than the eradication 'of the cancer of
discrimination. <u>Lehman v. Toys R Us, Inc.</u>, 132 N.J. 587
(1993).   Further, the NJLAD is intended to be interpreted
liberally in order to achieve its goals.  <u>Franek v. Tomahwk
Lake Resort</u>, 333 N.J. Super. 206 (App. Div. 2000).  It is
well established that the NJLAD is intended to be New
Jersey's remedy for unacceptable discrimination and is to be
construed liberally.

In interpreting New Jersey's anti-discrimination laws, it
is true that some courts have looked to federal law for
guidance.  See, <u>Turner v. Wong</u>, 363 N.J. Super. 186, 210
(App. Div. 2003) ("In interpreting the LAD, the federal law
has consistently been considered for guidance."); <u>Payton v.
New Jersey Turnpike Authority</u>, 148 N.J. 524, 538 (1997)
("Federal Jurisprudence...is particularly relevant because
the LAD draws significantly from federal anti-discrimination
laws").

However, it is widely recognized that the NJLAD is
substantively different and broader anti-discrimination
statute than it's federal counterpart.  In <u>L.W. v. Toms River
Reg. School Bd.</u>, 381 N.J.Super. 465, 489 (App.Div. 2005), the

22

court recognized that although federal legislation may not provide a remedy in a particular case, this fact is not relevant to the LAD, which provides a full range of legal and equitable remedies for unlawful discrimination, not only in the workplace but also in respect to public accommodations. See Also, Bergen Commercial Bank v. Sisler, 157 N.J. 188 (1999), holding that 'to the extent the federal standards are useful and fair, they will be applied in the interest of achieving a degree of uniformity in the discrimination laws...however, where a provision of the LAD differs substantively from federal law, a court must conduct its own analysis in order to discern the underlying legislative intent.

Significantly, New Jersey courts have recognized that the NJLAD provides far greater anti-discrimination protections beyond the outright denial of services on the basis of race. The Turner court explained:

> The LAD is not limited to outright denial of access of service. As noted, it also renders unlawful any acts discriminating against any person in the furnishing of public accommodation...The Statutory protection has been interpreted to reach situations where customers are merely discouraged from using a public facility because of the verbal comments made to them about their protected status. Turner 363 N.J.Super at 212.

The focal issue is whether defendant acted with actual or apparent design to discourage present or future use of the

public accommodation by plaintiff on account of their

protected status. <u>Turner</u> at 213.

In sum, the NJLAD is indisputably a substantively

different and broader anti-discrimination statute than 42

U.S.C. § 1981.   It would be improper to dismiss the

plaintiffs claims under the NJLAD based upon the defendants

unsupported argument that a dismissal of plaintiff's § 1981

claims also requires a dismissal of the NJLAD claims.

### POINT III

**PLAINTIFFS HAVE SATISFIED THE PLEADING REQUIREMENTS IN ORDER
TO SURVIVE A 12(b)(6) MOTION TO DISMISS SINCE THE WELL
PLEADED FACTS IN THE COMPLAINT ARE SUFFICIENTLY DETAILED TO
STATE A CLAIM FOR RETALIATION UNDER 42 U.S.C. § 1981**

The defendants argue that plaintiff's have failed to

adequately allege that plaintiffs engage in any protected

conduct contesting racial discrimination, much less that BofA

retaliated against plaintiffs for protected conduct.

As set forth at length herein, the plaintiffs submit that

they have set forth sufficient facts to sustain a claim for

discrimination in violation of § 1981.

To prevail, a § 1981 retaliation plaintiff must present

evidence showing (1) they engaged in protected activity, (2)

defendant took an adverse action against them, and (3) a

causal connection between the protected activity and the

adverse action.  <u>Moore v. City of Philadelphia</u>, 461 F. 3d

331, 341 (3d Cir. 2006); <u>Oliva</u>, 604 F.3d at 798; <u>Cardenas v.</u>
<u>Massey</u>, 269 F.3d 251, 263 (3d Cir. 2001).

 The defendant can rebut the prima facie case by asserting
a legitimate, nondiscriminatory reason for the adverse
action.  <u>Quiroga v. Hasbro</u>, Inc., 934 F.2d 497, 501 (3d Cir.
1991).  The burden then shifts back to the plaintiff to show
by a preponderance of the evidence that the reasons offered
by the defendant are merely a pretext for discrimination. See
Also, <u>Waddell v. Small Tube Prod. Inc.</u>, 799 F.2d 69, 73 (3d
Cir. 1986).

 At this stage of the proceeding, the plaintiff is not
required to make a prima facie showing.  The question before
the court is whether the plaintiffs complaint has set forth
sufficient facts to withstand the Motion to dismiss.

 Protected activity under § 1981 includes opposing
unlawful race discrimination in the making or enforcement of
contracts, as those terms are defined by 42 U.S.C. §1981(a),
and also opposing actions plaintiff reasonably believes to be
§ 1981 violations.  <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786
F.3d 264, 282 (4th Cir. 2015)(enbanc).

 The Supreme Court has defined "oppose" in this context to
include, *inter alia:* "…to be hostile or adverse to, as in
opinion." <u>Crawford v. Metro Gov't of Nashville & Davidson</u>
<u>Cnty Tenn.</u>, 555 U.S. 271, 276 (2009).

This broad definition led the Court to conclude the threshold for oppositional conduct is not onerous. Instead, communication of a belief that an action is a form of race discrimination almost always constitutes opposition to the activity. See Id., 555 U.S. at 276.

No hard and fast rule defines whether conduct in a given case is protected. Curay-Cramer v. Ursuline Academy, 450 F.3d 130, 135 (3d Cir. 2006), Rather, "[w]hen deciding whether a plaintiff has engaged in opposition conduct, [the Court looks] to the message being conveyed rather than the means of conveyance." Id. Specifically, the question is whether it is possible to discern from the context of the statement that the employee opposes race discrimination. Curay-Cramer, 450 F.3d at 135; See Also, EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1012-13 (9th Cir. 1983).

Thus, opposition may take many forms including protesting against discrimination by industry, or by society in general. Barber v. CSX Distribution Services, 68 F.3d 694, 702 (3d Cir. 1995); Neiderlander v. American Video Glass Co., 80 Fed. Appx. 256, 260 (3d Cir. Nov. 5, 2003) (emphasis added), citing, Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990).

"Protected activity" under § 1981 is not limited to employment discrimination. See, CBOCS West, Inc. V.

Humphries, 553 U.S. 442, 451-52 (2008).   Rather, the
protected activity under § 1981 need only relate to
discrimination prohibited by that statute-that is,
discrimination because of race.   CBOCS, 553 U.S. at 451-52;
Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir.
1998).

The discrimination opposed need not specifically involve
the plaintiff.   Indeed, this Court's Model Jury Instructions
clarify that § 1981 retaliation claims encompass protesting
the violation of "someone else's right to be free from racial
discrimination."   Third Circuit Model Civil Jury Instructions
§ 6.1.6 [Alternative Two];   Moore, 461 F.3d at 342.

In the present matter, the plaintiff has alleged the
following facts in the complaint:

> On or about May 20, 2020, a customer, who was a
> member of a minority group, tendered a duly
> authorized negotiable instrument to Bank of America
> for payment which was issued from the Republic
> Account.  See Comp. € 27.

> A telephone conference ensued between members
> of Republic, MBE, and CFO, Carra Wallace and various
> representatives of Bank of America where Bank of
> America was notified that the purpose of the program
> was to assist minority, women owned and small and
> diverse businesses in a time of crisis.  See Comp. €
> 31 & 32.

> Bank of America refused to honor checks or
> electronic payments and was 'unable to support
> Republic Groups's efforts to participate in the PPP
> program as an intermediary in the distribution of

PPP Loans." See Comp. € 35.


Bank of America refused to honor checks or
electronic items presented for payment which
Republic Group had issued for the purpose of
providing desperately needed funding to minority
businesses. See Comp. € 36.


Rafael Martinez forwarded written notice to
Bank of America that he understood Bank of America's
perceived issues but wished to maintain his personal
and family accounts with Bank of America. See Comp.
€ 37.


Bank of America never provided a legitimate,
lawful or non-discriminatory reason for its refusal
to honor checks or electronic payments issued by
Republic in connection with the PPP Loan Program.
The discriminatory decision was based solely upon
Republic and MBE being a minority and woman owned
business whose customers are predominantly minority
and woman owned businesses fueled by a minority
customer presenting a check to Bank of America for
payment. See Comp. € 39.


On August 3, 2020 and August 10, 2020, Merrill
and Bank of America sent notice to Republic, Rafael
Martinez, Chelsea Martinez and Reaching New Heights
that they accounts were being frozen in 21 days and
closed in 30 days. See Comp. € 41-45.


The refusal of Bank of America to provide any
reason or support for the initial refusal to honor
payments issued by Republic and MBE as well as the
subsequent retaliatory actions taken by Bank of
America and Merrill against Rafael Martinez, Chelsea
Martinez, Republic, MBE and Reaching New Heights
demonstrates the venom of these officials and
confirms their discriminatory and retaliatory animus
towards minority and women owned businesses whose
management had the nerve to seek to defend its civil
and contractual rights. See Comp.  € 46.

The exploitation and retaliation against
Republic and the Martinez family reveals that racial
discrimination occurs even at the pinnacle of
success and industries such as financial services.
See Comp. € 47.

The plaintiffs complaint clearly sets forth sufficient
facts to place the defendants on the notice that the
plaintiffs are alleging they protested the discriminatory
actions of Bank of America.   It was explained that the PPP
program which Martinez and Republic launched was intended to
provide minority customers with PPP Loans.   The telephone
conference can reasonably be construed as a protest of Bank
of America's actions in refusing to honor a check of a
minority customer and accusing a minority client of fraud.

In retaliation for the protected activity Bank of America
required Republic to transfer all funds set aside for
minority loans.   Thereafter, Merrill and Bank of America
closed the business and personal accounts of Rafael Martinez
and Chelsea Martinez for no legitimate reason.   Chelsea
Martinez had absolutely no contact with Bank of America and
Merrill prior to receiving notice her accounts were being
closed.   Chelsea Martinez is an Officer of Republic and MBE
and a black woman of Dominican descent.   She had no
involvement with Bank of America or Merrill and her accounts
were never used for any unlawful purpose.   It is clear that
the BofA defendants closed her accounts as a direct response

29

to Rafael Martinez and Carra Wallace voicing concern about
the treatment of a customer as well as BofA's claim that they
would not participate in Republic's efforts to distribute PPP
Loans to minority businesses and individuals.

The plaintiffs have satisfied the pleading requirement
through the facts which allege BofA was notified that a
minority customer was treated poorly when he presented a
check at a BofA branch, Republic and MBE are minority owned
businesses engaged as a non-banking activities intended to
provide loans to desperately needed minority businesses and
individuals during a national crises.   The defendants took
adverse action against the plaintiffs in refusing to honor
checks and payments from the Republic account despite
sufficient funds in the account because BofA would not
support Republic's efforts to assist minorities and minority
businesses.   Thereafter, BofA took further adverse action
against all plaintiffs based upon their minority status and
their efforts to assist minority groups by the act of closing
all of their accounts for no legitimate reason.

The complaint sets forth sufficient facts under the
totality of the circumstances, as a play cannot be understood
on the basis of some of its scenes, but only on its entire
performance, and, similarly, a discrimination analysis must
concentrate not on individual incidents, but on the overall

30

scenario.   <u>Moore</u>, 461 F.3d at 346, citing,  <u>Andrews v. City</u>
<u>of Philadelphia</u>, 895 F.2d 1469, 1484 (3d Cir. 1990).

The Motion to dismiss plaintiffs claim of Retaliation in
violation of § 1981 should be denied.

**POINT IV**

**THE PLAINTIFFS HAVE ADEQUATELY PLEADED A CLAIM FOR BREACH OF
CONTRACT.**

Defendants argue that plaintiffs breach of contract claim
should be dismissed because it does not specifically identify
the provisions of the contract allegedly breached.  Causes of
action for breach of contract fall into two categories: (1).
Violation of express terms of the contract; and/or (2).
Violation of the implied covenant of good faith and fair
dealing.  <u>Sons of Thunder v. Borden, Inc.</u>, 148 N.J. 396, 420
(1997).  Plaintiffs have pleaded both.

The plaintiff has pleaded a breach of the banking
agreement based upon the banking agreement.  The banking
Agreement provides that an account may closed or frozen if
BofA believes that the account may be subject to irregular,
unauthorized, fraudulent or illegal activity.  The
plaintiffs were not accused of, nor did they violate, any
terms of the banking agreement.  The notices sent to
Republic, Rafael Martinez, Chelsea Martinez and Reaching New
Heights regarding the account closures provide no reason and

31

were sent long after the issues regarding the PPP Loans were
resolved and the PPP funds were transferred out of the
Republic Account.  All of these accounts were frozen and
closed without providing any explanation.  Similarly, Chelsea
Martinez's account with Merrill was never questioned or
investigated, it was simply closed.

Accordingly, the plaintiffs have properly pled breach of
the banking agreement.

An action for breach of the implied covenant of good
faith and fair dealing permits 'redress for the bad faith
performance of an agreement even when the defendant has not
breached any express terms.  <u>Seidenberg v. Summit Bank</u>, 348
N.J. Super. 243, 257 (App.Div. 2002).   The covenant provides
that neither party shall do anything which will have the
effect of destroying or injuring the right of the other party
to receive the fruits of the contract.  <u>Id.</u>   A breach of
this covenant may be found even if no express term of the
contract is violated.  <u>Brunswick Hills Raquet Club, Inc. v.
Route 18 Shopping Center Assoc.</u>, 182 N.J. 210, 226 (2005).
The defendants claim that there can no breach because they
acted within the express terms of the Borrower Agreement.
As a general principle, there can be no breach of the implied
promise or covenant of good faith and fair dealing where the
contract expressly permits the actions being challenged, and

32

the defendant acts in accordance with the express terms of
the contract.  23 Williston on Contracts § 63:22 (4th ed.).
The court in <u>In re Checking Account Overdraft Litigation</u>, 694
F.Supp.2d 1302 (S.D.Fla.2010) held that plaintiffs did not
want to change the terms of the contract, but instead wanted
defendants to reasonably exercise their contractual
discretion. <u>Id.</u> at 1315 (citing <u>Amoco Prod. Co. v. Heimann</u>,
904 F.2d 1405, 1411–12 (10th Cir.1990)) (where discretion
exists in one of two parties to a contract, that discretion
must be exercised in good faith).  As a result, the District
Court denied the motion to dismiss on the claim for a breach
of the covenant of good faith and fair dealing.  See Also,
<u>Hughes v. T.D. Bank, N.A.</u> 856 F.Supp.2d 673 (D.N.J. 2012).

In the present matter, the plaintiffs do not seek to
vary express terms of the contract, but allege that BofA
failed to exercise its contractual discretion reasonably and
in fact had a discriminatory intent.  Plaintiffs allege that
defendants closed the accounts with malice and a result of
discriminatory and unconscionable conduct toward the
plaintiffs.

For all of these reasons, the plaintiffs have stated a
claim for breach of contract and breach of the implied
covenant of good faith and fair dealing.

33

## POINT V

### THE PLAINTIFFS CONSENT TO THE VOLUNTARY DISMISSAL OF COUNT FOUR OF THE COMPLAINT AND SHOULD BE PERMITTED TO AMEND THE COMPLAINT TO CONFORM WITH THE PLEADING REQUIREMENT AS NECESSARY

The plaintiffs acknowledge that Count Four alleging violation of the New Jersey Civil Rights Act does not apply to the defendants because they did not act under color of law[2].   Accordingly the plaintiffs consent to the dismissal of count four of the complaint.

Additionally, the Third Circuit precedent supports the notion that in civil rights cases District Courts must offer amendments, irrespective of whether it is requested, when dismissing a case for failure to state a claim unless doing so would be inequitable or futile.  <u>Fletcher-Harlee Corp. V.</u>

---

[2]While is acknowledged that the defendants are not state actors and did not act under the color of State Law, Senate Democrats introduced a bill in October 2020 that would prohibit discrimination against customers in the financial services industry — legislation they say would strengthen the Civil Rights Act of 1964, which does not cover the banking industry.

The Fair Access to Financial Services Act would make it illegal for banks or any financial institution to deny services based on race, color, religion, national origin, sexual orientation and "This new legislation would ensure that all people receive equal treatment when trying to access services at financial institutions and hold them accountable when they engage in discriminatory acts," the senators wrote.

The senators said the bill is a direct response to reports, including in The New York Times in June, of discrimination experienced by Black and Brown people at banks such as Wells Fargo, Bank of America and JPMorgan Chase.

The Times article included accounts from Black people who said they were turned away or accused of fraud while trying to make simple transactions, such as to cash a check or withdraw funds.

34

<u>Pote Concrete Contractors, Inc.</u> 482 F.3d 251 (3rd Cir. 2007). The plaintiffs submit that in the event the court finds the plaintiffs complaint does not allege sufficient facts to state a claim upon which relief may be granted, the plaintiffs should be afforded the opportunity to amend and correct the pleading.

<b><u>CONCLUSION</u></b>

For all of the reasons set forth herein, the plaintiffs submit that the complaint alleges sufficient facts upon which relief may be granted.

Dated: December 7, 2020

Respectfully submitted,

Shannon Garrahan, Esq.
Law Offices of Shannon Garrahan, P.C.
2 Forest Avenue-Second Floor
Oradell, New Jersey 07649
(201) 909-0700